No. 23-1795

# United States Court of Appeals for the Federal Circuit

DEXCOM, INC.,

*Plaintiff-Appellant,*

v.

ABBOTT DIABETES CARE INC.
ABBOTT DIABETES CARE SALES CORPORATION,

*Defendants-Appellees.*

Appeal from the U.S. District Court for the District of Delaware,
Nos. 1:21-CV-01699 and 1:22-CV-605, Circuit Judge Kent A. Jordan

## APPELLEES' RESPONSE BRIEF (CORRECTED)

Amanda J. Hollis
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

John C. O'Quinn
Jason M. Wilcox
William H. Burgess
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 389-5000

Ellisen Shelton Turner
KIRKLAND & ELLIS LLP
2049 Century Park East,
Suite 3700
Los Angeles CA 90067
(310) 552-4200

Benjamin A. Lasky
Ashley Ross
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

June 28, 2023
Corrected July 7, 2023

# CERTIFICATE OF INTEREST

1. **Represented Entities (Fed. Cir. R. 47.4(a)(1)):**
Abbott Diabetes Care Inc.;
Abbott Diabetes Care Sales Corporation

2. **Real Party in Interest (Fed. Cir. R. 47.4(a)(2)):** N/A

3. **Parent Corporations and Stockholders (Fed. Cir. R. 47.4(a)(3)):** Abbott Laboratories

4. **Legal Representatives (Fed. Cir. R. 47.4(a)(4)):**

**Kirkland & Ellis LLP**
Kristina R. Cary
Christopher T. Jagoe
Jon R. Carter (no longer with firm)

**Morris, Nichols, Arsht & Tunnell LLP**
Jack B. Blumenfeld
Anthony David Raucci
Rodger Dallery Smith, II

**Kelly Hart & Hallman LLP**
Kelly Ransom
J. Stephen Ravel

**McAndrews, Held & Malloy, Ltd.**
Leland G. Hansen
Edward A. Mas II
Alexander M. Vogler

5. **Related Cases (Fed. Cir. R. 47.5(a)).** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

   **Yes.** Per Fed. Cir. R. 47.5(b), a separate Notice of Related Case Information has been filed.

6. **Organizational Victims and Bankruptcy Cases (Fed. R. App. P. 26.1(b)-(c)):** N/A

# TABLE OF CONTENTS

Statement of Related Cases ..................................................... vii

Introduction ................................................................................ 1

Statement of the Issue ............................................................... 5

Statement of the Case ................................................................ 5

    A.    After Nine Years of Litigation, The Parties Enter a
Settlement and License Agreement (2014). ........................ 6

        1.    Licenses .......................................................................... 6

        2.    Dispute-Resolution and Forum-Selection Clauses ........ 7

        3.    Covenant Period and Challenge Clause ....................... 9

        4.    Term, Delaware Choice-of-Law Clause, and
Irrelevance of Headings and Captions......................... 10

    B.    Despite the License, DexCom Sues Abbott in Texas,
Alleging Infringement of Five Patents; Abbott
Countersues in Delaware for Breach of Contract (2021). .... 11

    C.    Abbott Files IPR Petitions to Challenge the Patents
Asserted Against It, Before the Statutory Deadline
Expires (April 2022). ............................................................ 13

    D.    DexCom's Infringement Suit is Transferred to Delaware
and Consolidated with Abbott's Breach-of-Contract Suit
(May 2022). ........................................................................... 14

    E.    Six Months After Abbott's IPR Filings, DexCom Moves
for a Preliminary Injunction (October 2022), Which the
District Court Denies. ........................................................... 15

        1.    The Court Denies Abbott's Rule 12 Motion to
Dismiss and Strike DexCom's Agreement-Based
Counterclaims and Defenses. ...................................... 17

        2.    The District Court Denies DexCom's Motion for
Preliminary Injunction. .............................................. 18

    F.    DexCom Files this Interlocutory Appeal; the District
Court Rules that Abbott Did Not Breach the Agreement
by Filing IPR Petitions. ....................................................... 22

Summary of the Argument ................................................................... 24

Standard of Review .......................................................................... 28

Argument ........................................................................................... 28

I.    The District Court Permissibly Found that DexCom Failed to Demonstrate Irreparable Harm, For Reasons Including DexCom's Six-Month Delay Requesting Emergency Relief. ......... 31

    A.    The District Court Applied the Correct Law. ....................... 31

    B.    The District Court Did Not Abuse Its Discretion. ............... 38

II.   The District Court Permissibly Found that the Remaining Factors Favored Denying the Preliminary Injunction. ................. 45

    A.    The District Court Did Not Abuse Its Discretion in Balancing the Hardships. ...................................................... 45

    B.    The District Court Did Not Abuse Its Discretion in Considering the Public Interest. .......................................... 51

III.  The District Court's Subsequent Ruling on the Merits Confirms that DexCom Has Mischaracterized the Preliminary Injunction Opinion ............................................................................................ 55

Conclusion ............................................................................................ 58

# TABLE OF AUTHORITIES

## Cases

*Acierno v. New Castle County*, 40 F.3d 645 (3d Cir. 1994) ....................32

*Algood Casters Ltd. v. Caster Concepts, Inc.*, No. 20-CV-4623,
    2020 WL 5274172 (S.D.N.Y. Sept. 4, 2020) .......................................33

*Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.,
Inc.*, 511 F.App'x 398 (6th Cir. 2013) ...................................................32

*Altana Pharma AG v. Teva Pharms. USA, Inc.*,
    566 F.3d 999 (Fed. Cir. 2009) .............................................................46

*American Patriot Ins. Agency, Inc. v. Mutual Risk Mgmt.,
Ltd.*, 364 F.3d 884 (7th Cir. 2004) .......................................................41

*Answers Genesis of Ky., Inc. v. Creation Ministries Int'l*,
    556 F.3d 459 (6th Cir. 2009) .........................................................40, 41

*Apple Inc. v. Samsung Electronics Co., Ltd.*,
    678 F.3d 1314 (Fed. Cir. 2012) ...........................................................28

*Atlantic Marine Construction Co. v. U.S. District Court*,
    571 U.S. 49 (2013) ...............................................26, 34, 35, 47, 48, 51

*Baltimore & Ohio Chi. Term. R. Co. v. Wisc. Cent. Ltd.*,
    154 F.3d 404 (7th Cir. 1998) ...................................................36, 39, 43

*Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959)..........................31

*Beame v. Friends of the Earth*, 434 U.S. 1310 (1977) .............................31

*Beijing Fito Med. Co. v. Wright Med. Tech.*,
    763 F.App'x 388 (6th Cir. 2019) .....................................................39, 44

*Benisek v. Lamone*, 138 S. Ct. 1942 (2018)..................................28-32, 37

*Bethune-Cookman Univ., Inc. v. Dr. Mary McLeod Bethune
Nat'l Alumni Ass'n*, No. 22-14257,
    2023 WL 3704912 (11th Cir. May 30, 2023) .......................................32

*Butts v. Altman*, 953 F.3d 353 (5th Cir. 2020) ........................................52

*Chrysler Motors v. Auto Body Panels of Ohio*,
    908 F.2d 951 (Fed. Cir. 1990) .......................................................47, 52

*Citibank N.A. v. Citytrust*, 756 F.2d 273 (2d Cir. 1985) .........................32

*Cuviello v. City of Vallejo*, 944 F.3d 816 (9th Cir. 2019).......................37

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)..5, 29, 34, 37, 44

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) ..............................32

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) .........................................28

*General Protecht Group, Inc. v. Leviton Mfg. Co.*,
    651 F.3d 1355 (Fed. Cir. 2011) ...............................................12, 53, 54

*GTE Corp. v. Williams*, 731 F.2d 676 (10th Cir. 1984)...........................32

*High Tech Med. Instrumentation v. New Image Indus.*,
    49 F.3d 1551 (Fed. Cir. 1995) ..............................................................32

*Holmberg v. Armbrecht*, 327 U.S. 392 (1946) .........................................31

*Hybritech Inc. v. Abbott Lab'ys*,
    849 F.2d 1446 (Fed. Cir. 1988) .....................................................15, 37

*In re Mirant Corp.*, 613 F.3d 584 (5th Cir. 2010)....................................36

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (en banc)................................................49

*Jones v. Markiewicz-Qualkinbush*,
    842 F.3d 1053 (7th Cir. 2016)..............................................................32

*Lanin v. Borough of Tenafly*,
    No. 12-3399, 2013 WL 936363 (3d Cir. Mar. 12, 2013) .....................32

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)......................34

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) ..................29

*Mytee Prod. Inc. v. Harris Rsch., Inc.*,
  439 F.App'x 882 (Fed. Cir. 2011) ........................................ 44

*Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*,
  25 F.4th 998 (Fed. Cir. 2022) .................... 26, 39, 43, 44, 47, 48, 51, 55

*NRDC v. Pena*, 147 F.3d 1012 (D.C. Cir. 1998) ...................................... 32

*Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*,
  380 F.3d 200 (4th Cir. 2004) ........................................ 41, 42

*Pub. Serv. Co. of N.H. v. Town of W. Newbury*,
  835 F.2d 380 (1st Cir. 1987) ................................................ 46

*Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*,
  872 F.2d 75 (4th Cir. 1989) ................................................ 32

*RoDa Drilling Co. v. Siegal*, 552 F.3d 1203 (10th Cir. 2009) ................ 40

*SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348 (2018) ...................................... 40

*Sharpe v. Jefferson Distrib. Co.*, 148 F.3d 676 (7th Cir. 1998) .............. 36

*Texas Instruments v. Tessera*, 231 F.3d 1325 (Fed. Cir. 2000) ......... 39, 44

*Trafigura Beheer B.V. v. M.T. PROBO ELK*,
  266 F.App'x 309 (5th Cir. 2007) .............................................. 35, 36, 41

*Trump v. Hawaii*, 138 S. Ct. 2392 (2018) ........................................ 33, 52

*Ty, Inc. v. Jones Grp, Inc.*, 237 F.3d 891 (7th Cir. 2001) ................. 47, 52

*United States v. Tsarnaev*, 142 S. Ct. 1024 (2022) ................................ 28

*Univ. of Texas v. Camenisch*, 451 U.S. 390 (1981) ................................ 46

*Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*,
  645 F.3d 26 (1st Cir. 2011) ................................................ 32

*Wildhawk Invs., LLC v. Brava I.P., LLC*,
  27 F.4th 587 (8th Cir. 2022) ................................................ 32

*Winter v. NRDC*, 555 U.S. 7 (2008) ........................................ 28, 29, 33

**Statutes**

28 U.S.C. § 1404(a) ...................................................... 2, 12, 27, 30, 35, 49

35 U.S.C. § 6(a) .............................................................................. 50

35 U.S.C. § 313................................................................................ 16

35 U.S.C. § 314(b) .......................................................................... 39

35 U.S.C. § 315(b) ..................................................................... 13, 50

35 U.S.C. § 316(a)(11)................................................................... 14

**Other Authorities**

11A M.K. Kane & A.D. Lahav, Federal Practice & Procedure (Wright & Miller) § 2948.1 (3d ed.)............................... 31

11A M.K. Kane & A.D. Lahav, Federal Practice & Procedure (Wright & Miller) § 2948.3 (3d ed.)........................ 47, 52

37 C.F.R. § 42.107 ........................................................................... 16

Fed. R. Civ. P. 12 ...................................................... 17, 18, 26, 46, 48, 56

# STATEMENT OF RELATED CASES

No other appeal from the proceedings below was previously before this or any other appellate court. The following pending cases may directly affect or be directly affected by the Court's decision in this case.

*Abbott Diabetes Care Inc. v. Dexcom, Inc.*, IPR2022-00908 (P.T.A.B.)
*Abbott Diabetes Care Inc. v. Dexcom, Inc.*, IPR2022-00909 (P.T.A.B.)
*Abbott Diabetes Care Inc. v. Dexcom, Inc.*, IPR2022-00913 (P.T.A.B.)
*Abbott Diabetes Care Inc. v. Dexcom, Inc.*, IPR2022-00914 (P.T.A.B.)
*Abbott Diabetes Care Inc. v. Dexcom, Inc.*, IPR2022-00921 (P.T.A.B.)
*Abbott Diabetes Care Inc. v. Dexcom, Inc.*, IPR2022-00922 (P.T.A.B.)

## INTRODUCTION

DexCom's appeal challenges the district court's order denying its motion for a preliminary injunction. As part of a broader, internally-inconsistent argument, DexCom contended both that a contractual forum-selection clause was entirely inapplicable to the parties' dispute *and* that the same contractual forum-selection clause barred Abbott from pursuing *inter partes* reviews. DexCom thus sought a "*preliminary*" injunction that would have required Abbott to *permanently* dismiss its IPRs. The district court did not abuse its discretion in denying that motion. And the court has since definitively rejected DexCom's interpretation of the parties' agreement.

*First*, the district court permissibly found that DexCom's five-month delay in even raising the forum-selection clause with respect to the IPRs and six-month delay in moving for an injunction were inconsistent with irreparable harm. Longstanding precedent supports the district court's finding, which is reason enough to affirm, as every movant must demonstrate that an injunction is necessary to avoid irreparable injury. DexCom's attempts to address its delay ask this Court to second-guess the district court's discretion for no good reason. In every case DexCom analogizes to

1

this one, the applicant sought relief immediately. DexCom suggests that it was somehow prudent to wait as long as it did, but points to no new information that it had in October when it moved for a preliminary injunction that it lacked in April or early May when Abbott filed its IPR petitions and the Texas court transferred the district court case to Delaware. The district court permissibly found DexCom's explanations unpersuasive.

*Second*, the district court appropriately weighed the balance of hardships and the public interest, including considering the internal inconsistency in DexCom's position. The upshot of DexCom's position would in no way be preliminary for Abbott's IPRs—it would vitiate Abbott's IPRs altogether on a basis that even DexCom itself contends is inapplicable (albeit for reasons different from Abbott's). Although DexCom purports to seek enforcement of the forum-selection clause, DexCom's ultimate position on the merits is that the contract (and clause) does not apply to this case at all. DexCom's position is "heads-I-win-tails-you lose": It seeks a "preliminary" injunction that would permanently end Abbott's IPRs based on a forum selection clause that DexCom vigorously argues does not apply. DexCom cannot square that circle by treating its injunction request like a 28 U.S.C. § 1404(a) transfer motion that only requires a "non-frivolous" read-

ing of the forum-selection clause. Unlike DexCom's arguments here, a transfer motion does not forever cut off a party's substantive, congressionally conferred rights.

In these unique circumstances, the district court acted within its discretion by declining to grant relief based on a position DexCom was forcefully arguing against. In all events, the district court did not abuse its discretion in declining to issue a *preliminary* injunction, where granting the injunction would have *permanently* harmed Abbott, but denying the injunction would not (at least at that stage of the proceedings) leave DexCom without a remedy.

*Finally*, DexCom's entire brief relies on the false premise that the district court denied a preliminary injunction while nonetheless finding that Abbott's IPRs actually violated the forum-selection clause. In one moment of candor, DexCom acknowledges that is not what the district court determined—rather, the court *assumed* for the sake of argument some likelihood of success, but found that the other traditional injunction factors warranted denial of an injunction. Yet, throughout its brief, DexCom otherwise wrongly asserts that the court "found" or "ruled" that DexCom established a likelihood of success on the merits. From there, Dex-

Com's arguments rely on the premise that the district court was required to act as if DexCom had conclusively established its position on the merits.

The premise was false when DexCom filed its brief, and has become false beyond debate in light of the district court's later, definitive ruling at the pretrial conference that Abbott's IPRs did *not* violate the forum-selection clause. DexCom's misreading of the district court's opinion denying a preliminary injunction and its failure to argue the merits are independently fatal to its appeal. Indeed, DexCom says not a word about the merits of its (erroneous) reading of the parties' agreement—a reading the district court's ruling on the merits has since rejected. And, having waived such arguments, it is too late for DexCom to backfill in its reply brief. To the extent DexCom wishes to challenge the district court's subsequent ruling, the time to make that argument is in an appeal from a final judgment, not in this interlocutory proceeding.

At bottom, DexCom's appeal assumes a view of the merits that the district court did not share (and has since explicitly rejected), fails to explain its six-month delay, and treats *preliminary* injunctions as automatic whenever a forum-selection clause is involved, notwithstanding the balance of *permanent* harms. The district court properly assessed the merits

and DexCom's delay, and its decision denying the injunction is fully con-
sistent with Supreme Court precedent in *eBay* and other cases—
emphasizing that injunctions are extraordinary relief, never available as a
matter of right, and may be withheld if an applicant fails to exercise rea-
sonable diligence. This Court should affirm.

## STATEMENT OF THE ISSUE

Whether the district court abused its discretion when it denied Dex-
Com's motion for a preliminary injunction.

## STATEMENT OF THE CASE

This is an interlocutory appeal from an order denying DexCom's mo-
tion for a preliminary injunction to require Abbott to withdraw four pend-
ing *inter partes* reviews. *See* Appx1-25 (opinion); Appx26-27 (order). Dex-
Com sued Abbott in June 2021, alleging infringement of five patents. Ab-
bott's defenses and counterclaims included contentions that Abbott has a
license to the patents under a 2014 contract, and that DexCom's infringe-
ment lawsuit breached that contract.

Abbott filed *inter partes* review petitions in April 2022, challenging
DexCom's asserted patents. DexCom participated in those proceedings
without complaint for more than five months, including filing preliminary
patent owner responses (and sur-replies in some proceedings) that en-

5

gaged Abbott's arguments on the merits. In October 2022, however, Dex-

Com for the first time contended in district court that the 2014 contract

barred Abbott's IPRs, and moved for a preliminary injunction to force Ab-

bott to withdraw the IPRs. The district court denied that motion, and

DexCom filed this interlocutory appeal. In the meantime, district court

proceedings have continued. At the June 8, 2023 pretrial conference, the

district court rejected DexCom's view of the merits, ruling that the con-

tract's forum-selection clause does not bar Abbott's IPRs. A jury trial is

scheduled for July 10 on the remaining contractual issues in the case, none

of which are at issue in this appeal.

## A. After Nine Years of Litigation, The Parties Enter a Settlement and License Agreement (2014).

Abbott and DexCom are competitors in the market for continuous

glucose monitors for patients with diabetes. In 2014, after nine years of

litigation, Abbott and DexCom entered into a Settlement and License

Agreement (called the "SLA" in the district court's opinion). Appx331-366.

The Agreement's relevant provisions are described below.

### 1. Licenses

Abbott and DexCom each licensed certain patents to the other, for

certain products, and subject to the counterparty's material compliance

6

with the Agreement. Appx340 (§C, licenses). Abbott received a license to "DexCom Licensed Patents," for "ADC Products," as follows:

> Subject to ADC's [Abbott Diabetes Care's] material compliance with the terms and conditions of the Agreement, DexCom hereby grants ADC a royalty-free, world-wide, non-exclusive, non-sublicensable license under *DexCom Licensed Patents* to make, have made, use, offer for sale, distribute, import, and have imported *ADC Products*.

Appx340 (¶C.2);[1] *see also* Appx332-333 (¶A.3, defining "ADC Products"); Appx335-337 (¶A.13, defining "DexCom Licensed Patents").

The Agreement's definition of "DexCom Licensed Patents" (¶A.13) has four parts. Appx335-337. A warranty provision, ¶H.3, also provides a license if DexCom later obtains certain patent claims that would otherwise be outside the scope of "DexCom Licensed Patents." Appx351. Parts of both provisions include substantive criteria for whether a patent is licensed or not.

## 2.    Dispute-Resolution and Forum-Selection Clauses

In the event of "dispute(s) aris[ing] from, under or relating to [the] Agreement," the Agreement requires Abbott and DexCom to meet and confer according to specified procedures. Appx352 (¶J.1); Appx6 (quoting *id.*). The procedures include negotiations over as many as 89 days—including a

---

[1] All quoted emphasis is added unless otherwise indicated.

notice, an initial meeting, and in-person meetings involving the company presidents. Appx352 (¶J.1). If the parties still did not resolve their differences, they could pursue remedies "including instituting litigation subject to the forum selection clause provided in Paragraph J.4 of this Agreement." *Id.*; Appx6 (quoting *id.*).

The forum-selection clause likewise applies to "any dispute arising from or under or relating to [the] Agreement," and provides for exclusive jurisdiction in Delaware's federal district court "to the extent permitted by law," and in Delaware state courts "to the extent subject matter jurisdiction is lacking in federal courts." The full clause provides as follows:

> 4. <u>Choice of Forum</u>. The United States Federal District Court for the District of Delaware shall have exclusive jurisdiction over any dispute arising from or under or relating to this Agreement, to the extent permitted by law. The state courts of Delaware shall have exclusive jurisdiction over any dispute arising from or under or relating to this Agreement, to the extent subject matter jurisdiction is lacking in federal courts. For any dispute arising from or under or relating to this Agreement, each Party stipulates to personal jurisdiction and venue in the state of Delaware. For any dispute brought in Delaware that arises from or under or relates to this Agreement, each Party waives any defenses based upon lack of personal jurisdiction, lack of venue, or forum non conveniens, and waives the right to seek transfer out of Delaware.

Appx353(¶J.4).

### 3.    Covenant Period and Challenge Clause

Abbott and DexCom each agreed, provided the other was in material compliance with the Agreement, not to sue the other for patent infringement, and not to "Challenge" the other's patents during a "Covenant Period" ending March 31, 2021.   Appx5; Appx340-344(¶¶D.1-.5); Appx345 (¶¶F.1-.2); Appx335(¶A.11, defining "Covenant Period").

The Agreement defines "Challenge" to mean assertions by a party "in any court or other competent governmental authority" that the other's patents are invalid or unenforceable.  The definition includes "reexamination, interference or derivation proceeding[s]," and "post-grant review or *inter partes* review."  Appx333-334(¶A.7).  The full definition is as follows:

> 7.    <u>"Challenge"</u> means, with respect to any Party's patents or patent applications, directly or indirectly, (a) to assert <u>in any court or other competent governmental authority</u> that such patents or patent applications are invalid or unenforceable, (b) to seek <u>in any court or other competent governmental authority</u> to narrow or change the scope of such patents or patent applications, (c) to seek, request, or otherwise take any action that results, or is reasonably expected to result in the declaration, initiation or continuation of a <u>reexamination, interference or derivation proceeding, opposition, post-grant review or inter partes review</u> of such patents, (d) to submit to any court <u>or other competent governmental authority</u> prior art, evidence, or arguments adverse to the patentability or validity of any of the other Party's patents or patent applications, or (e) to assist or cooperate with any other person or party to do any of the foregoing.

Appx333-334(¶A.7).

Although each party agreed not to Challenge the other's patents dur-
ing the Covenant Period, each also "reserve[d] its rights" more broadly to
Challenge either any patent asserted against it, or any patent for which
there is a legal deadline to make the Challenge.

> [¶F.3]  However, *each Party reserves its rights* and is permitted
> to Challenge *any patent* or patent application that is being *as-
> serted* (or threatened to be asserted) *against it or its products.*
>
> [¶F.4]  Further, each Party reserves its rights and is permitted
> to Challenge any of the patents of the other Party if there is a
> statute, regulation, or rule that sets a deadline to make the
> Challenge.

Appx346; Appx9 (quoting *id.*).  Paragraph F.4 continues, explaining that
its reference to deadlines "includes, without limitation, … submitting a re-
quest for, or participation in, a Post Grant Review proceeding before the
USPTO" and "submitting a request for, or participating in, an appeal or
similar judicial review" of such proceedings.  Appx346; Appx9 (quoting *id.*).

### 4.    Term, Delaware Choice-of-Law Clause, and Irrelevance of Headings and Captions.

The Agreement includes an expiration date, Appx351(¶I.1), a Dela-
ware choice-of-law clause, Appx356(¶K.7), and a provision that "[h]eadings
and captions used in this Agreement are for ease of reference only," "do not

constitute part of this Agreement[,] and shall not be used in interpreting or construing it." Appx358(¶K.15).

## B. Despite the License, DexCom Sues Abbott in Texas, Alleging Infringement of Five Patents; Abbott Countersues in Delaware for Breach of Contract (2021).

In June 2021, DexCom sued Abbott in the Western District of Texas, alleging infringement of five patents. *See* Appx42 (Dkt.1); Appx89 (first amended complaint); Appx122. Although the Covenant Period had expired, the parties' reciprocal patent licenses had not. *See* Appx351(¶I.1).

In Abbott's view, DexCom's infringement complaint violated the Agreement for at least three reasons relevant to this appeal. *First*, Abbott believed it had a license to claims within those patents, as they at least either fell within the Agreement's definition of "DexCom Licensed Patents," or violated the warranty provision. *See* Appx136-140; Appx1707(¶36). *Second*, DexCom had not followed the Agreement's dispute-resolution procedure before suing. *See* Appx475-476 (October 15, 2021 letter to DexCom); Appx1436-1438 (September 20, 2021 letter to DexCom); Appx1710(¶48) (Abbott Complaint); Appx1713-1715(¶¶61-76) (same); Appx1716(¶80(4)) (same). *Third*, by suing in Texas rather than Delaware, DexCom violated the Agreement's forum-selection clause. Appx1439-1441.

11

On September 20, 2021, Abbott initiated the Agreement's dispute-resolution procedure with a letter to DexCom. That same day, Abbott moved to transfer the case to Delaware. Abbott's letter explained its view that it was licensed to DexCom's asserted patents, and asked DexCom to dismiss its case or meet with Abbott according to the Agreement's dispute-resolution procedure. Appx1436-1438. DexCom refused to engage. Appx473; Appx475-476.

Abbott's motion asked the district court to transfer the case to Delaware under the Agreement's forum-selection clause. Appx125-146. Citing *General Protecht Group, Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355 (Fed. Cir. 2011) and other cases, Abbott's transfer motion explained that patent infringement claims trigger forum-selection clauses in patent license agreements where: **(1)** the forum-selection clause is not limited to license-related issues (*e.g.*, failure to pay royalties), and **(2)** the defendant raises a non-frivolous license defense to infringement. Appx133-134. Abbott explained in detail why both requirements were met. Appx135-140.[2] DexCom contended Abbott's license defense was "frivolous" because DexCom

---

[2] Alternatively, Abbott contended the case should be transferred for convenience to the Northern District of California under 28 U.S.C. § 1404(a). Appx140-144.

did not believe the asserted patents met the Agreement's definition of DexCom Licensed Patents.  Appx381-386.

In December 2021—while the transfer motion was still pending and after DexCom refused to engage in the dispute-resolution procedure—Abbott filed a separate action against DexCom in the District of Delaware. Appx1696-1721.  Abbott's complaint contended DexCom breached the Agreement and the implied covenant of good faith and fair dealing—including by suing Abbott on licensed patents, failing to follow the Agreement's dispute-resolution procedure, and filing suit in Texas.  *See* Appx1716(¶80); Appx1717-1718(¶¶85-87).  Abbott also sought a declaratory judgment that it did not infringe DexCom's patents because its activities were licensed and/or because DexCom's claims were barred by exhaustion.  Appx1719-1721(¶¶91-93; prayer for relief).

## C.   Abbott Files IPR Petitions to Challenge the Patents Asserted Against It, Before the Statutory Deadline Expires (April 2022).

Under 35 U.S.C. § 315(b), a party is forever time-barred from challenging a patent through an IPR petition if more than a year has passed from service of a complaint alleging infringement of that patent.  DexCom served its infringement complaint in July 2021.  Appx43 (entries 11-12).

13

By April 21, 2022, nearly ten months had passed, and DexCom continued to maintain its infringement lawsuit while refusing to use the Agreement's dispute-resolution procedure. With the statutory deadline approaching, Abbott filed IPR petitions challenging the five asserted DexCom patents.

Between October 31 and November 3, 2022, the PTAB instituted proceedings on four of the five patents. Appx648-885. The PTAB's scheduling orders contemplate oral argument on August 3, 2023. Under 35 U.S.C. § 316(a)(11), final written decisions are due between October 31 and November 3, 2023.

### D. DexCom's Infringement Suit is Transferred to Delaware and Consolidated with Abbott's Breach-of-Contract Suit (May 2022).

On May 5, 2022, shortly after Abbott filed its IPR petitions, the Texas district court granted Abbott's motion to transfer DexCom's patent infringement case to Delaware. Appx147-159. The court reasoned that the forum-selection clause was not limited to license-related issues, Appx153, Abbott's license defense was non-frivolous, Appx153-156, and other factors did not defeat transfer Appx156-159.

After the transfer, the Delaware district court consolidated DexCom's patent-infringement case (No. 22-605) with Abbott's breach-of-contract

14

case (No. 21-1699). Appx261-262(¶1); Appx529-531. Abbott's answer included counterclaims and defenses alleging Abbott was licensed to DexCom's patents, DexCom breached the agreement, and DexCom's patents were invalid and not infringed. *E.g.*, Appx567-568; Appx585-597. The Delaware district court also stayed both parties' infringement and invalidity claims and defenses, to permit certain contract claims and defenses to proceed first. Appx262-263 (¶¶2-3); *see also* Appx633-635; Appx638.

### E.    Six Months After Abbott's IPR Filings, DexCom Moves for a Preliminary Injunction (October 2022), Which the District Court Denies.

On September 22, 2022—five months after Abbott filed its IPR petitions, four-and-a-half months after transfer of the district court case to Delaware—DexCom suggested for the first time that the Agreement's forum-selection clause barred the IPRs. At the same time, DexCom continued to steadfastly maintain that the Agreement did not apply to its patents at all, and thus would have no bearing on the IPRs. But because *Abbott* had invoked the forum-selection clause to transfer DexCom's infringement case to Delaware, DexCom believed it followed that Abbott was required to withdraw its IPR petitions too (notwithstanding that DexCom's ultimate position on the merits is that the Agreement has no bearing on

the IPRs). Thus, in its answer to Abbott's counterclaims and in a letter to Abbott, DexCom stated that Abbott's IPR petitions were improper "*under [Abbott's] interpretation*" of the Agreement. *E.g.*, Appx314 (DexCom's answer, ¶319: "*under the ADC Parties' interpretation of the SLA*, the ADC parties have materially breached the SLA."); Appx315 (¶¶326-327, similar); Appx320-321 (¶358-361, similar); Appx623 (letter: "*Under ADC's position* that disputes relating to the Patents-in-Suit need to be resolved by a Delaware court … [e]ach of ADC's pending IPR Petition referenced above is a material breach of the SLA.").

DexCom then waited yet another month—until October 25, 2022—to move for a preliminary injunction, where it asked the court to order Abbott to withdraw its IPR petitions. Appx327-328.

When DexCom sent its letter, filed its answer, and moved for a preliminary injunction, the PTAB had not yet decided whether to institute. DexCom had participated fully in the PTAB proceedings without ever suggesting that the Agreement barred Abbott from pursuing them. In August 2022, DexCom had filed preliminary patent owner responses, which were optional, *see* 35 U.S.C. § 313; 37 C.F.R. § 42.107, and only addressed Abbott's unpatentability arguments on the merits, without mentioning the

Agreement.  *E.g.*, Appx910-992 (DexCom's preliminary patent owner response in IPR2022-00921).

> ### 1.  The Court Denies Abbott's Rule 12 Motion to Dismiss and Strike DexCom's Agreement-Based Counterclaims and Defenses.

The district court denied DexCom's motion for preliminary injunction after briefing and a hearing.  Appx1-25 (opinion); Appx26-27 (order).  At the outset, the court addressed Abbott's motion to dismiss and strike Dex-Com's Agreement-based counterclaims and defenses, which raised overlapping issues.  *See* Appx7-8.  Invoking Rule 12(b)(6) and (f), Abbott contended that DexCom's reading of the Agreement was "commercially unreasonable," and its counterclaims and defenses could thus be resolved on the pleadings.  Appx13-14.  The court considered two arguments.

*First*, the court agreed with DexCom that the IPRs "relat[e] to" the Agreement within the meaning of forum-selection clause.  Appx14-18.  The forum-selection clause refers to "any dispute *arising from or under or relating to this Agreement*, to the extent permitted by law."  Appx353.[3]

---

[3] Abbott of course disagreed because, among other reasons, patent invalidity has no effect on the parties' rights or obligations under the Agreement. For example, patent invalidity has no bearing on any royalty payments.

17

*Second*, the court acknowledged—*but left unresolved*—DexCom's argument that the Agreement clauses protecting the parties' right to "Challenge" each other's patents (¶¶F.3-.4) applied only during the "Covenant Period." Appx18-19. The court agreed with Abbott that "at the very least, DexCom's interpretation is not 'indisputably clear,' and any doubt should not be resolved on an interlocutory motion." Appx18 (quoting Abbott brief). Thus, the court did "*not resolve* which parties' interpretation of Sections F.3 and F.4 of the [Agreement] is correct on this interlocutory motion," but held only "that DexCom's position is *not so 'commercially unreasonable'* that their breach of contract claim warrants dismissal." Appx19.

## 2. The District Court Denies DexCom's Motion for Preliminary Injunction.

The court then turned to DexCom's motion for preliminary injunction. Appx19-20. Contrary to DexCom's repeated suggestions, the court did not find DexCom was likely to succeed on the merits. Although the opinion uses the subheading "1. DexCom Has Demonstrated a Likelihood of Success on the Merits," the reasoning that immediately follows makes clear that the court did not resolve the merits in DexCom's favor, or draw any conclusions about the merits beyond those stated in its analysis of Abbott's Rule 12 motion.

The opinion stated only that it "*can assume*, for the purpose of this preliminary injunction motion" that DexCom had some likelihood of success on the merits. Appx21. The court then explained that the merits for purposes of DexCom's preliminary-injunction motion turned on "the same two arguments discussed above" (in the context of Abbott's motion): **(1)** whether IPRs "relate to this Agreement" within the meaning of the forum-selection clause, and **(2)** whether the Challenge clauses permitted Abbott's IPR petitions. Appx20-21. The court's earlier analysis was sufficient for its assumption—it agreed with DexCom on the first point but "*declined to resolve at this time*" the second point. The district court reiterated three pages later that "it is yet to be determined whether the IPRs, in fact, violate the [Agreement]." Appx24-25.

Next, the court concluded that DexCom failed to demonstrate irreparable harm, principally because DexCom's delay seeking a preliminary injunction was inconsistent with any notion of "irreparable harm." Appx21-23. The court agreed with Abbott that DexCom offered no plausible reason for its decision to wait five months after the IPRs were filed to complain about the filing, and six months to request a preliminary injunction. Appx22. DexCom noted that it filed its motion shortly after Abbott moved

19

to dismiss DexCom's breach counterclaim, and contended that its delay
should be excused because the irreparable harm would come from the
PTAB's final decisions. *Id.* The district court found those excuses unpersuasive:

> DexCom obviously knew of [the] potential harm as soon as it
> learned about Abbott's IPR petitions, and it could have acted
> accordingly. Nothing about Abbott's motion to dismiss …
> changes that calculation. DexCom's assertion that it will be irreparably harmed rings hollow, given its active and comparatively lengthy participation in the IPR proceedings. In light of
> its inadequately explained delay in seeking injunctive relief,
> DexCom's assertions of irreparable harm are unpersuasive.

Appx22-23.

Finally, the court found that the balance of the equities and the public interest weighed against a preliminary injunction. Appx23-25. The
court agreed with Abbott that DexCom's argument was internally inconsistent because it depends on a premise "DexCom itself is aggressively arguing against." Appx23. DexCom's ultimate position on the merits is that
the Agreement does not apply to its asserted patents *at all*, which is why
DexCom has not dismissed its infringement claims. But DexCom's motion
for an injunction depended on the opposite premise: that the Agreement
*does* apply (notwithstanding DexCom's infringement claims), and that the
forum-selection clause forecloses Abbott's IPRs. Recognizing that Dex-

20

Com's position would bar Abbott from pursuing IPRs (which cannot be transferred to another forum)—thus *permanently* harming Abbott, if a preliminary injunction were improperly granted—the district court explained "it would be inequitable to preliminarily enjoin Abbott on the basis of a legal position that DexCom itself is aggressively arguing against in this court." Appx23.

The court added that DexCom had participated "in the IPR process for many months, absorbing the time, attention, and resources of the PTAB," without saying a word to the PTAB or the court about the Agreement, and it would be "less than fair" for DexCom to "then demand that it should all be for nothing because the process breaches the [Agreement]." Appx23-24.

The court acknowledged DexCom's argument that the public has an interest in enforcing contracts, but reiterated "it is yet to be determined whether the IPRs, in fact, violate the [Agreement]." Appx23-24. And "[a]t this point, the public has an interest in both preventing the assertion of invalid patents and allowing the PTAB to finish the instituted petitions, to which it has already devoted considerable time and resources." Appx25.

The court thus denied DexCom's motion for preliminary injunction. Appx25; Appx26-27 (order).

### F.    DexCom Files this Interlocutory Appeal; the District Court Rules that Abbott Did Not Breach the Agreement by Filing IPR Petitions.

DexCom filed this interlocutory appeal.  In the May 10 proposed pretrial order (over Abbott's objection), DexCom requested "guidance … at the pretrial conference," Appx1479(¶125), on "[w]hether the Court has determined that the scope of the Sections F.3 and F.4 of the [Agreement] are ambiguous and thus, whether their interpretation will be a question for the jury."  Appx1481(¶viii).

At a teleconference, in response to DexCom's request, Appx1494(10:4-5) (referencing Appx1481(¶viii)), the court indicated that although it was "inclined at this point to think that those provisions, F3 and F4, apply only during the covenant period," Appx1495(11:9-11), it nonetheless viewed those provisions as "consistent with"—not exceptions to—the forum selection clause.  That is because, as worded, the clause "*cannot prohibit IPRs*":

> That Sections F3 and F4 applied during the covenant period also is consistent with the forum selection clause, which was a point of dispute and consternation and previous arguments before me on this.

>*The forum selection clause cannot prohibit IPRs* because it vests exclusive jurisdiction in Delaware to the extent permitted by law, and IPRs are brought before the PTAB and so cannot be brought in Delaware, and the forum selection clause is, therefore, not breached by the filing of IPRs.

Appx1496(12:8-22).  The court provided those views "to give [the parties] a chance to come to court and argue your positions on June 8th [the pretrial conference] having heard this."  Appx1497(13:2-5).

At the June 8 pretrial conference, the court further explained:

>And I had said, just for the benefit of this record, that the ["]as permitted by law["] language or words to that effect in the forum selection clause made it clear that the IPRs were not something that were covered by the forum selection clause because they couldn't be brought in the District of Delaware. They could only be brought to the Patent Office.

Appx1624-1625(88:25-89:7).    After hearing argument, Appx1624-1630(88:3-94:6), the court ruled that the forum-selection clause did *not* bar Abbott's IPRs. Appx1630(94:7-18).  The court then asked the parties "what's left in the case," Appx1631(95:1), and both sides agreed DexCom's claim for breach of the forum-selection clause was resolved. Appx1631(95:5-8, 24-25).

As of this writing, the case is proceeding toward trial on July 10.  The primary issue for the jury will be Abbott's license defense—*i.e.*, whether DexCom's asserted patents are "DexCom Licensed Patents" and Abbott's

accused products are "ADC Products," within the Agreement's definitions of those terms.  Appx1563(27:2-7); *see also* Appx340 (¶C.2) ("ADC Products" licensed under "DexCom Licensed Patents"); Appx332-333 (¶A.3) (defining "ADC Products"); Appx335-337 (defining "DexCom Licensed Patents").  DexCom's claim that the forum-selection clause bars Abbott's IPRs—the predicate to its preliminary injunction motion—has now been resolved against DexCom, pending entry of final judgment, and will not be further heard at trial.

## SUMMARY OF THE ARGUMENT

DexCom fails to show an abuse of discretion in this Court's order denying its motion for a preliminary injunction.  This Court should affirm.

**I.**    DexCom fails to demonstrate error in the district court's ruling that DexCom failed to show that a preliminary injunction was necessary to prevent irreparable harm.  Such a showing is a prerequisite to an injunction, and an applicant's failure to make that showing is reason enough to deny a preliminary injunction.  Moreover, precedent of the Supreme Court and the courts of appeals uniformly holds that district courts act within their discretion when they find that an applicant's delay in seeking a preliminary injunction weighs against any argument that an injunction is

necessary to prevent irreparable harm. So it was here. Abbott filed its IPR petitions on April 21 and 23, 2022. The district court case was transferred to Delaware on May 5, 2022. Nothing relevant changed between then and October 25, 2022, when DexCom requested a preliminary injunction. The district court appropriately observed that DexCom delayed *six months*, filed substantive papers in the PTAB without complaint, and had no persuasive explanation for its delay.

DexCom's contrary arguments mischaracterize the law and record and ask this Court to second-guess the district court's exercise of discretion. DexCom's argument that the forum-selection clause *compelled* an injunction, regardless of its delay, is wrong because there is no such legal rule. Precedent holds that forum-selection clauses, arbitration demands, and similar arguments should be made as soon as possible in litigation, and that delay in that context—like any other—weighs against a movant's assertion that an injunction is necessary to prevent irreparable harm. The argument is also wrong because DexCom erroneously assumes that the forum-selection clause prohibited IPRs: the district court never suggested that in the first place, and has rejected that proposition. Finally, the district court did not "disregard" that delay is "but one factor" in the analysis;

DexCom simply disagrees with the weight the district court gave to its delay in this case, but fails to show that the court abused its discretion.

**II.**    DexCom also fails to demonstrate error in the district court's consideration of the balance of hardships and the public interest. DexCom's arguments assume, incorrectly, that the forum-selection clause bars IPRs. The district court never found that the forum-selection clause barred IPRs, and has since rejected that proposition. In assessing the merits, the district court's preliminary-injunction opinion found only that DexCom's position was not so "commercially unreasonable" as to warrant dismissal of its claims under Rule 12, and thus that DexCom had shown *some* likelihood of success on the merits. DexCom's arguments erroneously treat the district court as having conclusively found that the forum-selection clause bars IPRs, and thus erroneously accuse the district court of having acted inconsistently with cases like *Nippon Shinyaku* (where this Court found "as a matter of law" that a forum-selection clause barred IPRs) and *Atlantic Marine* (where the forum-selection clause's validity and scope were *undisputed*). These errors run through DexCom's treatment of the balance of hardships and the public interest.

26

DexCom's remaining arguments are unsound. The district court did not err by considering the self-contradiction in DexCom's position. In DexCom's view, the Agreement does not apply to the patents-in-suit at all. But it nonetheless seeks an injunction on the opposite premise— that the Agreement does apply to the patents-in-suit—plus its view that the forum-selection clause bars IPRs. DexCom tries to explain away the contradiction, but fails to show an abuse of discretion, and further errs by equating a court-to-court transfer under §1404(a) with the injunction it seeks here that would irreparably eliminate Abbott's right to pursue IPRs.

**III.**    DexCom filed its opening brief on May 19, 2023. Its brief skips over the merits entirely, arguing (at 16, 21) that the district court "erred in weighing the three remaining preliminary injunction factors." The district court's ruling on the merits at the June 8, 2023 pretrial conference definitively rejects the view of the merits that DexCom assumes throughout its brief but does not actually argue or defend. And that ruling confirms that DexCom's opening brief rests on a mischaracterization of the district court's preliminary-injunction-denial opinion's treatment of the merits. DexCom's entire opening brief is based on the mistaken premise that the district court adopted its view of the merits. The district court's subse-

quent order confirms that that was never true, and the reply brief is too late for DexCom to argue otherwise for the first time.

## STANDARD OF REVIEW

"The decision to grant or deny a preliminary injunction lies within the sound discretion of the district court," and is reviewed for "abuse of that discretion." *Apple Inc. v. Samsung Electronics Co., Ltd.*, 678 F.3d 1314, 1323 (Fed. Cir. 2012). Deference "is the hallmark of abuse-of-discretion review." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997). The reviewing court "must not substitute its judgment" for the district court's, but must "defer to the lower court's sound judgment, so long as its decision falls within its wide discretion and is not manifestly erroneous." *United States v. Tsarnaev*, 142 S. Ct. 1024, 1040 (2022) (citations omitted).

## ARGUMENT

The decision to grant or deny an injunction is "a matter of equitable discretion." *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018). "A plaintiff seeking a preliminary injunction *must* establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, *and* [4] that an injunction is in the public interest." *Winter v. NRDC*,

555 U.S. 7, 20 (2008).  "[A] preliminary injunction is 'an extraordinary remedy never awarded as of right.'" *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018) (quoting *Winter v. NRDC*, 555 U.S. 7, 24 (2008), (reversing preliminary injunction)); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 166 (2010) (similar, reversing preliminary injunction).  The district court's decision applies the correct law, and DexCom fails to show an abuse of discretion.

DexCom's failure to show irreparable harm is an independently sufficient reason to affirm.  Longstanding precedent holds that courts act within their discretion when they regard delays like DexCom's as inconsistent with irreparable harm.  Just as there is no patent-specific rule for permanent injunctions, *see eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-92 (2006), there is no unique or different rule for forum-selection clauses or antisuit injunctions.  DexCom's contrary arguments are unsound, and ultimately ask this Court to simply second-guess the district court's exercise of discretion in weighing the injunction factors, while misstating what the district court actually determined with respect to the merits.

Moreover, the district court was entitled to consider the relative strength of DexCom's merits arguments in assessing the balance of hardships and the public interest. DexCom cites cases where a contractual forum-selection clause either indisputably applied or at least the party asserting it believed it applied—usually from the 28 U.S.C. §1404(a) transfer context—and assumes those apply here. But the circumstances are fundamentally different, as the district court identified. As for the merits of DexCom's contingent interpretation of the Agreement, DexCom glosses over that factor entirely, arguing as if the district court found that the forum-selection clause barred Abbott's IPRs and it need say no more. OpeningBr.21. That approach misreads the district court's opinion, and has been overtaken in any event by the district court's later ruling that definitively rejects DexCom's interpretation. It is too late for DexCom to challenge the district court's interpretation in this appeal. The Court should affirm the district court's exercise of discretion, particularly given these unique circumstances.

## I.    The District Court Permissibly Found that DexCom Failed to Demonstrate Irreparable Harm, For Reasons Including DexCom's Six-Month Delay Requesting Emergency Relief.

### A.    The District Court Applied the Correct Law.

Irreparable harm is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction."  11A M.K. KANE & A.D. LAHAV, FEDERAL PRACTICE & PROCEDURE (WRIGHT & MILLER) § 2948.1 (3d ed.); *see also Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.").  An applicant's unwarranted delay can be reason enough to deny a preliminary injunction.  That is because parties requesting equitable relief must exercise reasonable diligence, *Benisek*, 138 S. Ct. at 1944 (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946)), and because "[a] long delay … after learning of the threatened harm also may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction."  11A WRIGHT & MILLER § 2948.1; *see also Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977) (Marshall, J., denying stay: delay "vitiates much of the force of their allegations of irreparable harm.").

Thus, nearly every court of appeals has held that a district court acts within its discretion when it finds that an applicant's insufficiently-

justified delay weighs heavily against granting a preliminary injunction.[4]

None have held otherwise, and most have held that such delays can be

---

[4] *E.g.*, *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 36 (1st Cir. 2011) (vacating preliminary injunction, holding "delay in seeking injunctive relief" undercut assertions of irreparable harm); *Citibank N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (reversing preliminary injunction, observing "[s]ignificant delay in applying for injunctive relief … *alone may justify a denial of a preliminary injunction* for trademark infringement."); *Acierno v. New Castle County*, 40 F.3d 645, 655-56 (3d Cir. 1994) (reversing preliminary injunction); *Lanin v. Borough of Tenafly*, No. 12-3399, 2013 WL 936363, at *3 (3d Cir. Mar. 12, 2013) ("delay in seeking a preliminary injunction [was] sufficient proof that the risk of immediate irreparable harm did not exist."); *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 79-80 (4th Cir. 1989) (six-month delay was reason enough to deny injunction); *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 511 F.App'x 398, 405 (6th Cir. 2013) ("[A]n unreasonable delay in filing for injunctive relief will weigh against a finding of irreparable harm."); *Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053, 1062 n.27 (7th Cir. 2016) (three-month "delay in asking for a preliminary injunction was far too long."); *Wildhawk Invs., LLC v. Brava I.P., LLC*, 27 F.4th 587, 597-98 (8th Cir. 2022) (citing *Benisek*, vacating preliminary injunction); *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (affirming denial of preliminary injunction; "The district court did not abuse its discretion by finding this delay undercut Garcia's claim of irreparable harm."); *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984) (reversing preliminary injunction); *Bethune-Cookman Univ., Inc. v. Dr. Mary McLeod Bethune Nat'l Alumni Ass'n*, No. 22-14257, 2023 WL 3704912, at *1 (11th Cir. May 30, 2023) (affirming denial of preliminary injunction because of plaintiff's six-month delay); *NRDC v. Pena*, 147 F.3d 1012, 1026 (D.C. Cir. 1998) ("If the plaintiff has failed to prosecute its claim for injunctive relief promptly, and if it has no reasonable explanation for its delay, the district court should be reluctant to award relief."); *High Tech Med. Instrumentation v. New Image Indus.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995) (affirming denial of injunction, observing insufficiently-explained delay "militates against the issuance of a preliminary injunction by demon-

dispositive in appropriate cases.  To be sure, a showing of likelihood of suc-

cess on the merits is *necessary* to obtain preliminary relief.  *See Trump v.*

*Hawaii*, 138 S. Ct. 2392, 2423 (2018); *Winter*, 555 U.S. at 20.  But prelimi-

nary relief can be denied based entirely on the district court's assessment

of irreparable harm or the balance of harms.  Indeed, as one court recently

observed, "[t]he case law is clear that the movant's unreasonable delay in

asserting its rights is *alone sufficient* to deny preliminary injunctive re-

lief."  *Algood Casters Ltd. v. Caster Concepts, Inc.*, No. 20-CV-4623, 2020

WL 5274172, at *3 (S.D.N.Y. Sept. 4, 2020) (citing four Second Circuit de-

cisions).

How much weight to give to an applicant's delay, and whether it is

"unreasonable," depend on the circumstances of individual cases, and are

matters of discretion.  Here, the district court considered the length of

DexCom's delay, the unpersuasiveness of DexCom's explanation, and the

circumstances surrounding that delay, and permissibly concluded that

DexCom had not shown irreparable harm.  Appx21-23.

DexCom is wrong to contend that the district court applied the wrong

law.  *First*, DexCom erroneously assumes (at 22) "that the Delaware exclu-

---

strating that there is no apparent urgency to the request for injunctive re-
lief.").

sive forum selection clause controls," and is doubly wrong in asserting that

singular "*fact* … should have carried substantial, if not dispositive weight."

That is not what the district court found, and even if it were, that does not

*compel* entry of a preliminary injunction notwithstanding the other tradi-

tional *eBay* factors.  Here, there simply is *no* finding, as DexCom asserts

(*e.g.*, at 18, 23, 31), that Abbott "defied a forum selection clause."  There is

only the district court's preliminary finding that DexCom's argument was

not "commercially unreasonable," Appx19, now followed by its definitive

ruling that DexCom's argument is wrong.  *See supra* pp.22-24.  DexCom

assumes that the forum-selection clause precludes IPRs and that the dis-

trict court simply chose not to enforce it.  That error runs throughout its

brief, as explained in greater detail below.  *Infra* §III.

*Second*, there is no different preliminary-injunction standard for fo-

rum-selection clauses or "antisuit injunctions," as DexCom asserts.  Dex-

Com repeatedly cites *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1

(1972), and *Atlantic Marine Construction Co. v. U.S. District Court*, 571

U.S. 49 (2013).  But neither case involved injunctions or delays.  *M/S*

*Bremen* merely held that forum-selection clauses are not disfavored, and

should be generally be enforced if they are valid and applicable.  407 U.S.

at 7-11. *Atlantic Marine* similarly held that when a party moves to transfer a case under §1404(a) based on an undisputedly valid and applicable forum-selection clause, that clause should be enforced absent "extraordinary circumstances." 571 U.S. at 52. There was no dispute about the validity or applicability of the forum-selection clause in *Atlantic Marine*. *See id.* at 54-55, 62 n.5. Nor was there any issue of delay: the defendant invoked the forum-selection clause *immediately* in its first responsive pleading. The complaint was served March 22, 2012, and the defendants moved on April 18, 2012 to dismiss or transfer the case based on the forum-selection clause. *See J-Crew Mgmt., Inc. v. Atl. Marine Constr. Co.*, W.D. Tex. No. 1:12-CV-228-LY, Dkt. Nos. 7-9 (service), 12 (motion to dismiss or transfer).

Thus, DexCom's contention (at 23) that "[t]his court has found irreparable harm *whenever* a party defies a forum selection clause" misses the mark. Indeed, none of DexCom's cited cases holds, or even suggests, that delay is irrelevant or weighed differently in preliminary-injunction motions involving forum-selection clauses. *Trafigura Beheer B.V. v. M.T. PROBO ELK*, 266 F.App'x 309 (5th Cir. 2007), which DexCom cites (at 27), merely affirmed a district court's exercise of discretion to grant an injunc-

tion, while acknowledging that a party may waive its right to invoke a forum-selection clause if it "has taken actions inconsistent with it, *or delayed its enforcement*, and other parties would be prejudiced." 266 F.App'x at 313 n.6 (citation omitted). *See also Sharpe v. Jefferson Distrib. Co.*, 148 F.3d 676, 680 (7th Cir. 1998) (affirming waiver; seven-month delay invoking forum-selection clause was "too long").

DexCom analogizes to motions to compel arbitration (at 27), but delay matters there too: "[t]he general rule is that a demand for arbitration, *like the invocation of a forum-selection clause … must* be made *as early as possible* so that the other party can know in what forum he has to proceed." *Baltimore & Ohio Chi. Term. R. Co. v. Wisc. Cent. Ltd.*, 154 F.3d 404, 408 (7th Cir. 1998); *see also In re Mirant Corp.*, 613 F.3d 584, 591 (5th Cir. 2010) (similar).

*Finally*, DexCom mischaracterizes the district court's analysis when it contends (at 24) that the court "disregarded" that delay is "but one factor" and "does not preclude, *as a matter of law*, a determination of irreparable harm." The cases DexCom cites (at 24-25) merely reject a *per se* rule

that applicants who delay can never *receive* injunctions.[5]  Rather, as *eBay*

makes clear, a court must always weigh the traditional injunction factors,

which is precisely what the district court did here.

The cases DexCom cites do not adopt the opposite *per se* rule that de-

lay can never be a reason to deny injunctive relief—in the context of a fo-

rum selection clause or otherwise.  It remains the law that injunctions are

extraordinary relief never granted as of right, *Benisek*, 138 S. Ct. at 1943,

irreparable harm is an important prerequisite, and district courts may find

that delay undermines an applicant's assertions of irreparable harm.  The

district court's decision was fully consistent with that law.  It considered

the parties' arguments, including the length of DexCom's delay, and the

insufficiency of DexCom's explanation.  Appx19-23.  And it acted con-

sistent with uniform precedent when it held that DexCom's delay reflected

a lack of diligence and undercut its arguments for irreparable harm.  *Id.*

---

[5] For example, *Hybritech Inc. v. Abbott Lab'ys,* 849 F.2d 1446 (Fed. Cir. 1988) affirmed the district court's exercise of discretion in granting a preliminary injunction.  *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019), a 2-1 decision, acknowledged that a "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." And although it stated "courts are loath to withhold relief solely on that ground," it acknowledged that they may do so, and excused the applicant's delay largely because of his *pro se* status.  *Id.*

**B.     The District Court Did Not Abuse Its Discretion.**

DexCom's remaining arguments to sidestep its delay are unsound, and ask this Court to second-guess the district court's discretion.  Again, Abbott filed its IPR petitions on April 21 and 23, 2022.  The Texas district court transferred the case on May 5, 2022.  Yet DexCom filed substantive, optional preliminary patent owner responses and sur-replies at the PTAB that made no mention of the Agreement, and waited until October 25, 2022 to seek an injunction from the district court.  At that point, nothing relevant had changed, and DexCom had no new information that it lacked months earlier.  As the district court noted "DexCom obviously knew of that potential harm [from a final PTAB decision] as soon as it learned about Abbott's IPR petitions, and it could have acted accordingly." Appx22.

*First*, DexCom contends (at 25-28) that it was somehow prudent to wait until after the Board instituted, and suggests (at 27) that an earlier motion might have been "premature."  By that logic, DexCom's own motion was premature, because it was filed several days *before* the Board began issuing decisions on whether to institute.  DexCom had no new information on October 25 that it lacked months earlier.

38

The decisions cited most prominently in DexCom's brief, moreover, put the lie to DexCom's arguments. In *Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*, 25 F.4th 998 (Fed. Cir. 2022)—which DexCom cites on nearly half the pages in its brief—the patent owner moved for a preliminary injunction *three weeks* after the IPR petitions were *filed*. *Id.* at 1004. That was months before any institution decision would have issued. *See* 35 U.S.C. § 314(b). In *Texas Instruments v. Tessera*, 231 F.3d 1325 (Fed. Cir. 2000), Texas Instruments likewise moved for a TRO and injunction *seven days* after Tessera filed an ITC complaint, and asked the district court to expedite proceedings to stay ahead of the ITC's decision whether to institute. *Id.* at 1327-28. In neither case was there any suggestion that the motions were premature. Similarly, in *Beijing Fito Med. Co. v. Wright Med. Tech.*, 763 F.App'x 388 (6th Cir. 2019), an antisuit injunction case DexCom cites (at 22 n.1), the movant requested an injunction "[s]hortly after being served" with the complaint in the case it sought to enjoin. *Id.* at 391. All of this is consistent with the "general rule" that forum challenges "must be made as early as possible," *Baltimore & Ohio*, 154 F.3d at 408.

DexCom's brief borders on frivolous when it suggests (at 28-29) its delay had anything to do with "attempts to resolve the dispute without the

aid of judicial relief." DexCom quotes *RoDa Drilling Co. v. Siegal*, 552
F.3d 1203, 1212 (10th Cir. 2009), but there is no analogy between the ne-
gotiations *RoDa* referred to and DexCom's actions in the IPRs. DexCom
*refused* Abbott's requests to follow the Agreement's dispute-resolution pro-
cedure with respect to DexCom's asserted patents. By the time DexCom
filed its motion, the parties were actively engaged in "an adversarial pro-
cess before the Patent Office." *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348,
1352 (2018). DexCom's preliminary patent owner responses and surreplies
were not akin to settlement negotiations. The district court did not err by
observing that DexCom "litigated in the PTAB for half a year before de-
claring that it needed emergency relief." Appx22. Abbott had filed IPR pe-
titions challenging DexCom's patents, DexCom had filed optional, prelimi-
nary patent owner responses and sur-replies disputing Abbott's arguments
on the merits, and the dueling submissions were pending before the PTAB.

DexCom's citations (at 27-28) are thus inapposite. The state of af-
fairs when DexCom moved for a preliminary injunction was nothing like
*Answers Genesis of Kentucky, Inc. v. Creation Ministries Int'l*, 556 F.3d
459, 472 (6th Cir. 2009), where foreign proceedings the movant sought to
enjoin were "voluntarily suspended" by *both parties* pending the American

litigation. *Id.* at 471.⁶ It was also nothing like *Trafigura* where, as Dex-

Com acknowledges (at 27), "the plaintiff[] had failed to prosecute the case"

during the defendant's delay invoking a forum-selection clause. 266

F.App'x at 312-13. And it was nearly the opposite of "settlement discus-

sions" that sufficiently explained the delay invoking the forum-selection

clause in *American Patriot Ins. Agency, Inc. v. Mutual Risk Mgmt., Ltd.*,

364 F.3d 884, 887-88 (7th Cir. 2004). All three decisions, moreover, af-

firmed the district court's exercise of discretion without suggesting that

the result was compelled.

For similar reasons, DexCom is wrong to contend (at 28-29) that it

filed only "minimal responsive pleadings," at the PTAB, or that there had

not been a "significant 'degree of litigation.'" The reference in *Patten*

*Grading & Paving, Inc. v. Skanska USA Building, Inc.*, 380 F.3d 200 (4th

Cir. 2004) to "minimal responsive pleadings" meant "*required* pleadings,"

"such as an answer or compulsory counter-claim," and stated only that

such filings were "not necessarily inconsistent with an intent to pursue ar-

---

⁶ *Answers Genesis* affirmed a district court's discretionary decision to *deny* an antisuit injunction—not because the motion was premature, but because the foreign proceedings the movant sought to enjoin were "voluntarily suspended" by "both parties" pending the American litigation. 556 F.3d at 471.

bitration." *Id.* at 206.  In the IPRs, DexCom was not simply filing required notice-pleading documents to comply with deadlines.  In the six instituted IPRs, DexCom's preliminary patent owner responses totaled 385 pages and nearly 75,000 words (exclusive of attachments).  Each one resembled a full-length appellate brief.  *See, e.g.*, Appx910-992 (DexCom's preliminary patent owner response in IPR2022-00921, 73 pages and 14223 words, per Appx991).  Those pleadings, and DexCom's sur-replies, were optional and substantive.  The district court permissibly regarded DexCom as "active[ly] … participat[ing] in the IPR proceedings."  Appx23.

*Third*, DexCom is wrong to contend (at 29) that the district court "disregarded the irreparable harm that DexCom faced in the form of a lower burden of proof for validity challenges before the Board than it would face in Delaware"—which DexCom says "attaches at the end of the proceeding, and thus is not subject to any delay objections."  *Id.*  The district court considered that point explicitly, and appropriately observed that "DexCom obviously knew of that potential harm as soon as it learned

about Abbott's IPR petitions, and it could have acted accordingly." Appx22.[7]

The district court was correct, and DexCom's contention that the harm of an IPR "attaches at the end" has no basis in precedent. *Every* litigation carries the threat of an adverse judgment on the merits at the end. But as explained above, the general rule is that parties should raise forum-selection clauses and similar challenges as soon as reasonably possible, and that unreasonable delay may result in forfeiture. *Baltimore & Ohio*, 154 F.3d at 408.

That makes good sense, and is consistent with longstanding precedent holding that injunctions are extraordinary relief, that the movant must demonstrate irreparable harm, and that delay may be inconsistent with assertions of irreparable harm. The general rule is also consistent with the cases on which DexCom relies most heavily—which *reject* DexCom's "attaches at the end" argument. *Nippon Shinyaku*, for example, reasons that the "harm" consists of being "deprived of its bargained-for

---

[7] Even if credited, DexCom's argument that an IPR causes cognizable "harm" supports the district court's finding at the pretrial conference that IPRs do not violate the forum-selection clause because they are not permitted by law to be filed in Delaware courts or anywhere outside the Patent Office. And DexCom emphasizes—the district court cannot, by law, resolve invalidity under a preponderance standard.

43

choice of forum and forced to litigate its patent rights in multiple jurisdictions," 25 F.4th at 1008.  As explained, *supra* p.39, the timelines of *Nippon Shinyaku*, *Texas Instruments*, and *Beijing Fito* put the lie to DexCom's suggestions that there was no need to act sooner.[8]

*Finally*, DexCom's suggestion of "a dangerous precedent" and "harmful incentives" has things exactly backwards.  Permitting district courts to weigh a movant's delay against its request for injunctive relief is consistent with equitable principles and under the traditional *eBay* factors, and discourages waste and opportunistic behavior.  *Mytee Prod. Inc. v. Harris Rsch., Inc.*, 439 F.App'x 882 (Fed. Cir. 2011), which DexCom cites (at 30-31) does not suggest otherwise.  *Mytee* merely declined to "adopt … a rule" that would *require* district courts to consider a party's failure to seek a preliminary injunction when deciding whether to grant a permanent injunction.  *Id.* at 888.  It is DexCom's rule that would set a dangerous precedent and foster harmful incentives—especially if the Court were to adopt DexCom's argument that the "harm" of an IPR only "attaches at the end" and "is not subject to any delay objections."  Such a rule would encourage

---

[8] DexCom repeats (at 29) that forum-selection clauses should generally be enforced.  But as explained, the forum-selection clause's scope was disputed when the district court ruled on DexCom's motion and later resolved against DexCom.

parties to lie in wait, holding forum-selection clauses in reserve as get-out-of-jail-free cards. On the theory that irreparable harm only "attaches at the end," a party in DexCom's shoes could proceed through full briefing, discovery, and argument at the PTAB before deciding whether to seek an injunction versus forgoing the injunction in hopes of benefiting from estoppel. There is no basis in law or equity for any such rule.

DexCom fails to show error in the district court's consideration of irreparable harm, which is an independently-sufficient basis to affirm.

## II. The District Court Permissibly Found that the Remaining Factors Favored Denying the Preliminary Injunction.

DexCom's objections (at 31-36) to the district court's consideration of the remaining two factors second-guess the district court's discretion, improperly assume the conclusion that the forum-selection clause bars Abbott's IPRs, and fail to show error in the district court's analysis.

### A. The District Court Did Not Abuse Its Discretion in Balancing the Hardships.

DexCom's objections to the district court's balancing of hardships (at 31-33) assume, incorrectly, that the forum-selection clause bars IPRs. Thus, DexCom contends (at 31) that "Abbott's choice of forum before the [PTAB] merits no weight because it has defied the forum-selection clause." (internal quotation marks omitted).

45

The main problem with that argument is that the district court *never* found that Abbott "defied the forum-selection clause." The court only found that DexCom's *arguments* were not so "commercially unreasonable" as to warrant granting Abbott's Rule 12 motion to dismiss DexCom's contract claims and defenses. *See* Appx13-14; Appx20-21; Appx24-25. In other words, the district court found only that DexCom had shown *some* likelihood of success on the merits, sufficient to meet the threshold requirement for a preliminary injunction. But the court went no further in assessing the merits. DexCom does not contend that the district court's assessment was erroneous, and should not be heard to do so for the first time in its reply brief.

There was no need for the district court to resolve the merits conclusively. Preliminary injunctions are decided on a short timeline with an abbreviated record, with necessarily tentative assessments of the merits. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1007 (Fed. Cir. 2009). And in this case, DexCom's failure to demonstrate irreparable harm made it unnecessary to inquire any further into the merits than the district court already had. *Pub. Serv. Co. of N.H. v. Town of W. Newbury*, 835 F.2d 380,

383 (1st Cir. 1987) ("Because of our analysis as to irreparable harm, we need not reach the question of likelihood of success on the merits.").

DexCom thus errs when it treats "success on the merits" as a binary inquiry, and assumes the district court was required to analyze the other factors on the assumption that the forum-selection clause conclusively barred Abbott's IPRs. Although preliminary-injunction applicants must show *some* likelihood of success as a threshold requirement, the court may appropriately consider the relative strength of that showing when weighing it against other factors. *See, e.g.*, *Ty, Inc. v. Jones Grp, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001) ("The more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position."); *Chrysler Motors v. Auto Body Panels of Ohio*, 908 F.2d 951, 953 (Fed. Cir. 1990) ("the trial court should *weigh* and *measure* each of the four factors against the other factors and against the magnitude of the relief requested"); 13A WRIGHT & MILLER § 2948.3.

DexCom is likewise wrong (at 31-32) to contend that *Nippon Shinyaku* and *Atlantic Marine* announce a "governing legal test" for forum-selection clauses that required the district court to issue an injunction. In both cases, the validity and import of the forum-selection clause were con-

47

clusively established. *Atlantic Marine*, 571 U.S. at 54-55, 62 n.5; *Nippon Shinyaku*, 25 F.4th at 1008 ("*We conclude as a matter of law* that the forum selection clause … precludes the filing of IPR petitions …").  Here, again, the district court found only that DexCom's invocation of the forum-selection clause was not so "commercially unreasonable" as to warrant judgment under Rule 12 for Abbott.

The district court also did not abuse its discretion by considering the self-contradiction in DexCom's position.  *See* OpeningBr. 32-33; Appx23-24.  As the district court explained, DexCom's position on the breach-of-contract claims is that the Agreement does not apply to this case at all—forum-selection clause or otherwise.  Appx23.  According to DexCom, the asserted patents "are not licensed," and the forum-selection clause is "inapplicable."  Appx23 (quoting DexCom pleadings).  Yet, DexCom's injunction motion depends on the opposite premise—that the Agreement's forum-selection clause applies, bars Abbott's IPRs, and that that position is so clearly correct that DexCom should receive an injunction irrevocably terminating Abbott's IPRs.  *Id.*  The district court permissibly reasoned that that result would be in tension with the equitable nature of preliminary injunctions.  *Id.* ("[I]t would be inequitable to preliminarily enjoin

Abbott on the basis of a legal position that DexCom itself is aggressively arguing against in this court."). It permissibly reasoned that DexCom's delays magnified the potential unfairness of that result, Appx23-24, and that Abbott's position did not suffer from the same inconsistency. Appx24.

DexCom's contrary arguments (at 32-33) fail to address much of the district court's reasoning, and continue to treat the merits as a wholly binary inquiry for preliminary injunction purposes. DexCom's argument for enjoining the IPRs does not follow automatically from the district court's order transferring the case. For one thing, enjoining an IPR is not functionally equivalent to a court-to-court transfer within the federal judiciary under §1404(a). One reason courts of appeals entertain mandamus petitions for §1404(a) transfers is because the main cognizable harm from wrongful transfer is "inconvenience." The mandamus petitioner "would not be able to show" in an ordinary appeal from final judgment "that it would have won the case had it been tried in a convenient venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008) (en banc). And if a federal case is transferred or dismissed on an incorrect view of the merits, it can usually be refiled or transferred back.

49

None of this is true of IPRs.  Although styled as a "preliminary" injunction, DexCom sought an order that would have forever barred Abbott from challenging DexCom's patents through IPRs.  The statutory time bar, 35 U.S.C. § 315(b) has run and cannot be waived or tolled.  And if the IPRs are dismissed, Abbott would forever lose the benefit of a statutory mechanism Congress created for challenging patents efficiently and expeditiously, with a panel of expert factfinders, 35 U.S.C. § 6(a) and a preponderance-of-the-evidence standard.  *Id.* § 315(e). Setting aside DexCom's delays, that irreparable harm to Abbott would perhaps be understandable if Abbott had conclusively bargained away the benefit of IPRs.  But where, as here, Abbott's and DexCom's ultimate positions are both that Abbott did *not* bargain away its right to file IPRs, the district court acted within its discretion by declining to enter a preliminary injunction "on the basis of a legal position that DexCom itself is aggressively arguing against." Appx23.

DexCom's "final" objection (at 33) merely repeats its disagreement with the district court's consideration of DexCom's participation in the IPRs, which is addressed above.  The district court did not err by observing

that DexCom's unexplained delay in seeking preliminary injunctive relief magnified the unfairness that would have resulted from an injunction.

## B.    The District Court Did Not Abuse Its Discretion in Considering the Public Interest.

DexCom's objections to the district court's consideration of the public interest (at 33-36) largely repeat its balance-of-the-hardships arguments, and commit the same errors. DexCom continues to assume that the forum-selection clause conclusively barred Abbott's IPRs, and thus argues (at 33-34 and 35-36) that a public "policy in favor of forum-selection clauses" should have trumped everything else in the public interest analysis. Again, the forum-selection clauses largely dominated the injunction inquiry in *Nippon Shinyaku* and the transfer inquiry in *Atlantic Marine* because the merits questions (validity and meaning of the forum-selection clauses) were conclusively established. In *Nippon Shinyaku*, the Court interpreted the clause "as a matter of law," 25 F.4th at 1008, and in *Atlantic Marine* there was no dispute. 571 U.S. at 54-55, 62 n.5. The rest of the inquiry concerned only whether to enforce the clause according to its terms.

Here, the merits were *not* conclusively established. The court merely found DexCom's position "not commercially unreasonable." The district

court thus did not err by reminding DexCom that "it is yet to be determined whether the IPRs, in fact, violate the [Agreement]," by considering the public interest in "preventing the assertion of invalid patents and allowing the PTAB to finish the instituted petitions," or by concluding, ultimately, that "the public interest does not alter" the balance of harms. Appx24-25.

DexCom is wrong to contend (at 35) that "[c]ourts always assess *likelihood* of success at the preliminary injunction stage; they never conclusively find success." Again, "assess[ing]" likelihood of success is not a binary inquiry. Courts assess whether the movant has made a sufficient threshold showing of likelihood of success on the merits.[9] But they also assess whether the applicant's likelihood of success on the merits is strong or weak, and weigh it accordingly with other factors. *Ty*, 237 F.3d at 895; *Chrysler*, 908 F.2d at 953; 13A WRIGHT & MILLER § 2948.3.

---

[9] *E.g.*, *Trump v. Hawaii*, 138 S. Ct. at 2423 ("Because plaintiffs have not shown that they are likely to succeed on the merits of their claims, we reverse the grant of the preliminary injunction as an abuse of discretion."); *Butts v. Altman*, 953 F.3d 353, 361 (5th Cir. 2020) ("If the party requesting a preliminary injunction cannot show a substantial likelihood of success on the merits, the injunction should be denied, and there is no need for the court to address the other requirements.").

DexCom is likewise wrong to suggest (at 35, citing *General Protecht Group, Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355 (Fed. Cir. 2011)), that a "non-frivolous" argument for invoking the forum-selection clause should have led inexorably to an injunction here.  In *General Protecht*, the Court considered how much of a threshold showing was necessary for an implied license defense to trigger a forum-selection clause's "relating to or arising out of" language.  651 F.3d at 1359.  The Court adopted the "non-frivolous dispute" standard to prevent the forum dispute from subsuming the merits.  If only a "bare allegation" of a license defense were sufficient, then "virtually every subsequent dispute between contracting parties would trigger such a forum selection clause."  *Id.*  But if "conclusive[]" proof that the license defense "would win" were required, then the forum-selection would become meaningless.  *Id.*  Thus, to keep the forum dispute from subsuming the merits, the court reasoned that a non-frivolous dispute regarding the scope of a patent license was enough to trigger the forum-selection clause—for purposes of deciding a motion to transfer in those circumstances.  *Id.*

It does not follow, however, that *any* non-frivolous argument invoking *any* forum-selection clause should entitle the movant to an injunction

(let alone what amounts to a permanent injunction as DexCom sought here). Whether the forum-selection clause bars Abbott's IPRs does not threaten to subsume the merits of whether the claims of DexCom's patents are invalid in light of the prior art before the PTAB. The district court did not err by considering the relative strength of DexCom's showing on the merits. And if more is needed, DexCom's argument for enjoining the IPRs is at least one step removed from Abbott's argument for transferring the case from Texas. Abbott argued for transfer based on a non-frivolous argument that it was licensed to DexCom's asserted patents and that the dispute over *that license defense* (i.e. whether the license was a defense to patent infringement) was a dispute relating to the Agreement. DexCom hotly disputes that argument, but nonetheless tries to bootstrap onto it by contending that Abbott's non-frivolous argument that it is licensed, *plus* DexCom's supposedly non-frivolous (but disputed) argument that the Agreement's forum-selection clause bars IPRs of licensed patents (though DexCom contends they are not licensed), entitles it to an injunction. Neither *General Protecht* nor any other case requires that result.

*Finally*, DexCom is simply reasserting its own view of its conduct when it contends (at 36) it "brought its preliminary injunction motion *ex-*

54

*peditiously.*" Suffice it to say, the district court was not required to (and did not) agree.

## III. The District Court's Subsequent Ruling on the Merits Confirms that DexCom Has Mischaracterized the Preliminary Injunction Opinion.

DexCom erroneously treats the district court as having found that DexCom was likely to succeed on the merits of its argument that the forum-selection clause barred IPRs. That inaccurate assumption permeates DexCom's brief in various forms.[10]  Based on that assumption, DexCom skips over the merits entirely, arguing (at 16, 21) that the district court "correctly" ruled in its favor on the merits, but "erred in weighing the three remaining preliminary injunction factors."  As explained above in connec-

---

[10] *E.g.*, OpeningBr.2 ("The district court … concluded that DexCom had shown a likelihood of success on the merits of its argument that the contractual forum selection clause barred the IPRs."); 5 (stating the "issue" as "[w]hether the district court erred in declining to [enjoin] Abbott from proceeding with IPRs it commenced *in violation of a contractual forum selection clause.*"); 12 ("The district court sided with DexCom" on the merits); 14 ("[T]he court first found that 'DexCom had demonstrated a likelihood of success on the merits'" (quoting and altering heading at Appx20)); 22 (assuming "[t]he fact that the Delaware exclusive forum selection clause controls"); 23 (assuming that this is a case of "a party def[ying] a forum selection clause, as Abbott has done here"); 23-24 (assuming "the harm of being forced to litigate outside the bargained-for choice of forum"); 31 (assuming Abbott "has defied the forum-selection clause"); 34-35 (contending this case is on the same footing as *Nippon Shinyaku* because "[c]ourts *always* assess likelihood of success at the preliminary injunction stage; they *never* conclusively find success" (emphasis altered)).

tion with individual arguments, DexCom mischaracterizes the district court's opinion and the merits inquiry at the preliminary-injunction stage. The court found only that DexCom had shown *some* likelihood of success— its argument was not "commercially unreasonable" or so weak as to warrant skipping the other factors. And the court appropriately considered the relative strength of DexCom's merits showing when weighing it against the other factors.

DexCom does not argue that the district court erred in assessing the merits; it *assumes* instead that the district court's assessment was stronger than it actually was. If there is any doubt that DexCom is wrong, the district court's subsequent pretrial conference rulings should dispel it. At the May 31 conference, the court reiterated that its preliminary-injunction opinion had found only that DexCom's position was not "so commercially unreasonable" as to warrant judgment for Abbott under Rule 12, and that its ruling was tentative:

> *I said in the motion to dismiss opinion* that I was not going to resolve which parties' interpretation of Sections F3 and F4 of the SLA is correct on this interlocutory motion. In other words, in the context of a Rule 12(b)(6) motion, *I didn't think Dex-Com's position was so commercially unreasonable that the breach of contract claim warranted dismissal at that point, while legal positions were still developing*, I was still gaining more understanding of the case. And so I wasn't going to decide

it at that point in time. It didn't mean I wasn't going to decide it.

Appx1494(10:12-22).  At that conference and at the June 8 pretrial conference, the district court proceeded to consider whether Abbott's IPR petitions violated the forum-selection clause, and determined conclusively that they did not.    Appx1496(12:8-22);    Appx1624-1625(88:25-89:7);  Appx1630(94:7-18).

The district court's ruling is not part of a final judgment, and thus does not render this case moot in the constitutional sense.  But it confirms that DexCom's opening brief misreads the preliminary-injunction opinion and mischaracterizes this case as involving a "violation of a contractual forum selection clause."  And it confirms that where DexCom has not challenged the district court's preliminary assessment of the merits or asked this Court to do so in the first instance, DexCom has no right to the order it requests on the last page of its brief (at 36) that would "direct[]" the district court "to enter the requested preliminary injunction forthwith."

# CONCLUSION

The district court's order should be affirmed.

June 28, 2023
Corrected July 7, 2023

Amanda J. Hollis
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000


Ellisen Shelton Turner
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles CA 90067
(310) 552-4200

Respectfully submitted,

*/s/   John C. O'Quinn*

John C. O'Quinn
Jason M. Wilcox
William H. Burgess
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 389-5000

Benjamin A. Lasky
Ashley Ross
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

*Counsel for Appellees Abbott Diabetes Care Inc.
and Abbott Diabetes Care Sales Corporation*

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATION

This brief complies with the type-volume limitations of the Federal Rules of Appellate Procedure and the Rules of this Court. According to the word processing system used to prepare this document, the brief contains 11,790 words.

*/s/ John C. O'Quinn*