# United States Court of Appeals for the Federal Circuit

---

**DEXCOM, INC.,**
*Plaintiff-Appellant*

**v.**

**ABBOTT DIABETES CARE, INC., ABBOTT DIABETES CARE SALES CORPORATION,**
*Defendants-Appellees*

---

2023-1795

---

Appeal from the United States District Court for the District of Delaware in Nos. 1:21-cv-01699-KAJ, 1:22-cv-00605-KAJ, Circuit Judge Kent A. Jordan.

---

Decided: January 3, 2024

---

WILLIAM ADAMS, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, argued for plaintiff-appellant. Also represented by DAVID LEON BILSKER, San Francisco, CA; NATHAN HAMSTRA, Chicago, IL; ALEXANDER HALE LOOMIS, Boston, MA; VALERIE ANNE LOZANO, I, Los Angeles, CA; JOHN W. SHAW, Shaw Keller LLP, Wilmington, DE.

JASON M. WILCOX, Kirkland & Ellis LLP, Washington, DC, argued for defendants-appellees. Also represented by WILLIAM H. BURGESS, JOHN C. O'QUINN; AMANDA J. HOLLIS,

Chicago, IL; Benjamin Adam Lasky, Ashley Ross, New York, NY, Ellisen Shelton Turner, Los Angeles, CA.

---

Before Dyk, Hughes, and Stoll, *Circuit Judges.*

Stoll, *Circuit Judge.*

This is an interlocutory appeal from a consolidated case between Abbott Diabetes Care, Inc. and Abbott Diabetes Care Sales Corp. (collectively, "Abbott") and DexCom, Inc. in the United States District Court for the District of Delaware. After DexCom sued Abbott for infringing its patents, Abbott petitioned for inter partes review of the asserted patents before the Patent Trial and Appeal Board. DexCom moved for a preliminary injunction to enjoin Abbott from proceeding with the inter partes review proceedings based on a forum selection clause in a settlement and license agreement between the parties. DexCom appeals the district court's denial of the preliminary injunction. Because the district court did not abuse its discretion in denying the preliminary injunction, we affirm.[1]

---

[1]    After oral argument, DexCom moved to voluntarily dismiss its appeal under Rule 42(b)(2) of the Federal Rules of Appellate Procedure because it contends an injunction is "no longer necessary" in light of the Patent Trial and Appeal Board's final written decisions in the inter partes reviews at issue. Pl.-Appellant's Mot. Voluntary Dismissal, ECF No. 46 at 1. Abbott opposes, contending that the parties continue to dispute whether Abbott breached the settlement and license agreement by filing its IPRs. *See* ECF No. 47.

We deny the motion. DexCom, as the party asserting mootness, bears the burden of demonstrating that (1) "there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have

BACKGROUND

DexCom and Abbott are competing manufacturers of continuous glucose monitoring systems. In 2014, after years of patent litigation, DexCom and Abbott entered into a settlement and license agreement (Agreement). The Agreement included (1) terms for a cross-license for certain patents, J.A. 340 § C; (2) a mutual covenant not to sue during a Covenant Period, J.A. 340–45 § D; (3) a mutual covenant not to Challenge DexCom's or Abbott's patents during the Covenant Period, J.A. 345–46 § F; and (4) a forum selection clause identifying the U.S. District Court for the District of Delaware as the exclusive jurisdiction "over any dispute arising from or under or relating to this Agreement, to the extent permitted by law," J.A. 353 ¶ J.4. It defined Challenge to mean:

> with respect to any Party's patents or patent applications, directly or indirectly, (a) to assert in any court or other competent governmental authority that such patents or patent applications are invalid

---

completely and irrevocably eradicated the effects of the alleged violation." *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979) (cleaned up); *see also Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1345 n.6 (Fed. Cir. 2019) (same). DexCom fails to meet this burden because the Board's final written decisions do not "completely and irrevocably eradicate[]" the potential for DexCom to challenge Abbott's ability to file and participate in inter partes reviews in the future. *Davis*, 440 U.S. at 631. Indeed, the parties continue to dispute whether the IPRs were barred under the Agreement. For at least these reasons, it is appropriate to deny the motion to dismiss. *See, e.g.*, *In re Nexium Antitrust Litig.*, 778 F.3d 1, 1–2 (1st Cir. 2015) (court's investment in time, existence of draft opinion, and parties' continued disagreement all support denial of voluntary motion to dismiss following oral argument).

or unenforceable, (b) to seek in any court or other competent governmental authority to narrow or change the scope of such patents or patent applications, (c) to seek, request, or otherwise take any action that results, or is reasonably expected to result in the declaration, initiation or continuation of a reexamination, interference or derivation proceeding, opposition, post-grant review or *inter partes review* of such patents, [or] (d) to submit to any court or other competent governmental authority prior art, evidence, or arguments adverse to the patentability or validity of any of the other Party's patents or patent applications . . . .

J.A. 333–34 ¶ A.7 (emphasis added). The Agreement specified the Covenant Period was to expire March 31, 2021. J.A. 335 ¶ A.11. Meanwhile, the Agreement was set to end "the earlier of (i) the date when the last of the Licensed Patents expires or (ii) December 31, 2025." J.A. 351 ¶ I.1.

After expiration of the Covenant Period, DexCom sued Abbott in the Western District of Texas, alleging infringement of sixty claims of five of its patents. Abbott moved to transfer the case to the District of Delaware, citing the Agreement's forum selection clause. While the motion to transfer was pending, Abbott filed a breach-of-contract suit against DexCom in Delaware. Among other things, it alleged that DexCom breached the Agreement by suing Abbott on licensed patents and by filing its suit in Texas in violation of the forum selection clause. The Western District of Texas court transferred DexCom's infringement suit to Delaware, where it was consolidated with Abbott's breach-of-contract suit.

In April 2022—ten months after DexCom filed its infringement suit in Texas—Abbott filed eight petitions for inter partes review (IPR) of DexCom's asserted patents. DexCom filed preliminary patent owner responses in

August 2022, urging the Board not to institute any of the IPRs. *See, e.g.*, J.A. 910–92.

Five months later, DexCom answered with a breach-of-contract counter-counterclaim at the district court, alleging *inter alia* that Abbott breached the Agreement's forum selection clause by filing IPR petitions. *See Abbott Diabetes Care, Inc. v. DexCom, Inc.*, No. 21-1699, 2023 U.S. Dist. LEXIS 69298, at *5–6 (D. Del. Apr. 12, 2023) (*Decision*); *see also* J.A. 320–21 ¶ 358. Prior to this time, DexCom had consistently taken the position that the claims of the asserted patents were not licensed, which would render the forum selection clause inapplicable. On October 14, 2022, Abbott moved to dismiss DexCom's counter-counterclaim.

Then, on October 25, 2022—six months after Abbott filed its IPR petitions—DexCom moved for a preliminary injunction, requesting the district court prohibit Abbott from proceeding with the IPRs. *See* J.A. 327–28. After analyzing the appropriate preliminary injunction factors, including whether DexCom "establish[ed] that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest," the district court denied the preliminary injunction. *Decision*, 2023 U.S. Dist. LEXIS 69298, at *20 n.9, *25–27 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The court assumed for purposes of the motion that DexCom met the first preliminary injunction factor, i.e., that DexCom had shown a likelihood of success. *Id.* at *20–21.

Turning to the second factor—irreparable harm—the district court found this factor favored denial of an injunction because DexCom actively participated in IPR proceedings for six months before seeking injunctive relief. *Id.* at *21–24. The court reasoned that DexCom's six-month delay "negat[es] the idea of irreparability." *Id.* at *23 (quoting *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d

1364, 1382 (Fed. Cir. 2002)).   The court explained that "[a]lthough DexCom says the harm it faces stems from the PTAB making a validity determination based on a lower standard of proof, DexCom obviously knew of that potential harm as soon as it learned about Abbott's IPR petitions, and it could have acted accordingly." *Id.* at *23.

The district court found that the third factor—balance of hardship—favored denial because DexCom's inconsistent legal positions (previously arguing that the patents were not licensed but now seeking a preliminary injunction by asserting that the patents were licensed) and use of Patent Trial and Appeal Board's (PTAB) resources (by participating in the IPRs) cut against equitable relief. *Id.* at *24–26. For the fourth factor—public interest—the district court explained that although "'no public interest [is] served by excusing a party's violation of its previously negotiated contractual undertaking to litigate in a particular forum,' it is yet to be determined whether the IPRs, in fact, violate the" Agreement. *Id.* at *26 (quoting *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1366 (Fed. Cir. 2011)). It then determined that "[a]t this point" the public interest in preventing invalid patents and allowing the PTAB to complete its proceedings weighed against an injunction. *See id.*

DexCom appeals from the district court's interlocutory order. We have jurisdiction under 28 U.S.C. §§ 1292(c)(1), 1295(a)(1).

## DISCUSSION

We review a denial of a preliminary injunction under regional circuit law—here, the law of the Third Circuit. *Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*, 25 F.4th 998, 1004 (Fed. Cir. 2022). The Third Circuit reviews such denials for an abuse of discretion and reviews underlying legal errors de novo. *Id.*; *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000). "To meet the abuse-of-discretion standard, the moving party must show

that the district court has made 'a clear error of judgment in weighing relevant factors or in basing its decision on an error of law or on clearly erroneous factual findings.'" *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306 (Fed. Cir. 2017) (quoting *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 150 F.3d 1374, 1377 (Fed. Cir. 1998)).

The court considers the following four factors in evaluating a motion for a preliminary injunction: "(1) whether the moving party has shown a reasonable likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm in the absence of a preliminary injunction; (3) whether the balance of hardships tips in the moving party's favor; and (4) the impact of a preliminary injunction on the public interest." *Nippon Shinyaku*, 25 F.4th at 1005.

The first factor, whether DexCom is likely to succeed on the merits of its breach-of-contract counter-counter-claim, requires interpretation of the Agreement. Specifically, we must determine whether the Agreement's forum selection clause bars the filing of IPRs after the Covenant Period. Thus, this appeal presents "a question of contract interpretation under Delaware law, which we review de novo." *Studiengesellschaft Kohle, M.B.H. v. Hercules, Inc.*, 105 F.3d 629, 632 (Fed. Cir. 1997); J.A. 356 ¶ K.7 ("This Agreement . . . shall be construed, governed, and interpreted in accordance with the laws of the State of Delaware . . . ."). The district court assumed for purposes of the motion that this factor weighed in favor of an injunction.[2]

---

[2]    The district court has since held that Abbott's IPR petitions did not violate the Agreement's forum selection clause, reasoning that IPR petitions could only be filed at the PTAB and thus could not be brought in the District of Delaware. *See* ECF No. 21, Ex. 2 (Pretrial Tr. at 88:25–89:06).

Our review of the Agreement compels us to conclude otherwise.

Under Delaware law, contract interpretation requires that the "construction . . . be that which would be understood by an objective, reasonable third party." *Estate of Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010). We are to read the contract "as a whole" and "give each provision and term effect, so as not to render any part of the contract mere surplusage." *Id.* (quoting *Kuhn Const., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396–97 (Del. 2010)). Our interpretation "requires all contract provisions to be harmonized and given effect where possible." *Martin Marietta Materials, Inc. v. Vulcan Materials Co.*, 68 A.3d 1208, 1225 (Del. 2012), *as corrected* (July 12, 2012).

Under the heading "F. No Challenge Covenants and Exceptions Thereto," the Agreement's no-challenge covenants state that "[d]uring the Covenant Period," DexCom and Abbott "shall not Challenge" each other's patents or patent applications provided that the parties are complying with the Agreement. J.A. 345 §§ F.1–2. This section of the Agreement also contains the following exceptions:

> 3. However, each Party reserves its rights and is permitted to Challenge any patent or patent application that is being asserted (or threatened to be asserted) against it or its products.

> 4. Further, each Party reserves its rights and is permitted to Challenge any of the patents of the other Party if there is a statute, regulation, or rule that sets a deadline to make the Challenge.

J.A. 346.

Section F.4 also lists nonlimiting examples of Challenges contemplated by the exception, such as post grant review or interference proceedings. J.A. 346. As noted *supra* at 3, the Agreement's definition of Challenge expressly

includes inter partes review of the parties' patents. J.A. 333 § A.7.

We are to interpret contract terms as an objective, reasonable third party would and, on its face, the forum selection clause applies during the Agreement's entire term, including during the Covenant Period. Under the heading, "Choice of Forum," the forum selection clause states: "The United States Federal District Court for the District of Delaware shall have exclusive jurisdiction over any dispute arising from or under or relating to this Agreement, to the extent permitted by law." J.A. 353 § J.4. Nothing in the forum selection clause or elsewhere in the Agreement suggests an intent to restrict the forum selection clause to the period after the Covenant Period.

Although the parties dispute whether the filing of IPRs was permissible after the Covenant Period, sections F.3 and F.4 indisputably allowed IPR filings during the Covenant Period under certain conditions. *See* Oral Arg. at 3:44–3:54 (DexCom admission), 23:40–23:50 (Abbott admission), https://oralarguments.cafc.uscourts.gov/default.aspx?fl=23-1795_09052023.mp3. It necessarily follows that because the forum selection clause governs both during and after the Covenant Period, the clause cannot operate to prohibit the filing of IPRs after the Covenant Period if it allowed them during the Covenant Period. *See* Oral Arg. at 2:22–3:00; *see also Martin Marietta*, 68 A.3d at 1225. We are not persuaded by DexCom's suggestion that the forum selection clause has a different interpretation during the Covenant Period versus after the Covenant Period. Nothing in the Agreement supports such an interpretation. We are similarly unpersuaded by DexCom's argument that the forum selection clause does not apply during the Covenant Period because, as noted above, nothing in the Agreement indicates as much.

Given the specific language in the Agreement in this case, DexCom's reliance on our decisions in *Texas*

*Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325 (Fed. Cir. 2000); *General Protecht*, 651 F.3d at 1355; and *Dodocase VR, Inc. v. MerchSource, LLC*, 767 F. App'x 930 (Fed. Cir. 2019) (nonprecedential) to support its argument that the forum selection clause precludes IPR proceedings is misplaced. Although we held that the specific forum selection clauses at issue in those cases prohibited filing a proceeding outside the stipulated forum,[3] those cases lacked a key

---

[3] In *Texas Instruments*, the district court denied a preliminary injunction to prevent the defendant from participating in an International Trade Commission (ITC) infringement action because although the parties' license agreement required that "any litigation . . . relating to this Agreement shall take place in California," Texas Instruments had "not established a likelihood of proving that [Tessera's] action before the ITC is litigation." 231 F.3d at 1327–28. In reversing the district court's denial, we explained that in the field of patent law, which was relevant to the license at issue, "'litigation' does not exclude ITC proceedings under section 337." *Id.* at 1330.

In *General Protecht*, the district court granted a preliminary injunction to prevent the defendant from litigating in the Northern District of California or at the ITC. 651 F.3d at 1358. There, the forum selection clause stated that "[a]ny dispute between the Parties relating to or arising out of this [Settlement Agreement] shall be prosecuted exclusively in the United States District Court for the District of New Mexico." *Id.* We found no abuse of discretion in the district court's grant of the injunction because the dispute indisputably "relate[d] to or ar[o]se[] out of" the settlement agreement. *Id.* at 1359.

In *Dodocase*, the district court also granted a preliminary injunction to prohibit IPR proceedings, specifically finding that "Dodocase was likely to succeed on its claim that MerchSource filed the PTAB petitions in violation of the forum selection clause of the" license agreement.

circumstance present here—that the Agreement allowed the filing of IPR petitions under certain circumstances notwithstanding the existence of the forum selection clause.

We therefore conclude DexCom cannot succeed on its breach-of-contract counter-counterclaim. Although the district court erred in assuming DexCom proved a likelihood of success, this error was harmless as our conclusion that DexCom failed to demonstrate a likelihood of success favors the district court's ultimate denial of the preliminary injunction. *See, e.g.*, *Nippon Shinyaku*, 25 F.4th at 1005 ("[U]nder both Federal Circuit and Third Circuit precedent, the first factor—i.e., likelihood of success on the merits—is a necessary showing to establish entitlement to a preliminary injunction."). Moreover, because DexCom cannot succeed on the merits in its breach-of-contract counter-counterclaim under our legal interpretation of the Agreement, it is not entitled a preliminary injunction, and we need not address the remaining preliminary injunction factors. *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1555–56 (Fed. Cir. 1994) ("A movant seeking a preliminary injunction must establish a reasonable likelihood of success on the merits . . . ."); *see also Nichia Corp. v. Everlight Ams., Inc.*, 855 F.3d 1328, 1344 (Fed. Cir. 2017) ("Because [the movant] failed to establish one of the four equitable factors, the court did not abuse its discretion in denying [the movant]'s request for an injunction."). Accordingly, we

---

767 F. App'x at 934. The forum selection clause there required that "disputes shall be litigated before the courts in San Francisco County or Orange County, California." *Id.* at 932 (cleaned up). The agreement prohibited the non-movant's ability to "challenge the validity or enforceability of the Licensed IP." *Id.* We explained that the district court "did not err in concluding that" the forum selection clause "encompassed PTAB proceedings." *Id.* at 935.

affirm the district court's denial of a preliminary injunction.

CONCLUSION

The district court did not abuse its discretion in denying the motion for a preliminary injunction. We therefore affirm.

**AFFIRMED**